596 N.W.2d 284 (1999)
G.A.W., III, Appellant,
v.
D.M.W., Respondent.
No. C8-98-2422.
Court of Appeals of Minnesota.
July 13, 1999.
Review Denied September 28, 1999.
*286 Samuel L. Hanson, Briggs and Morgan, Minneapolis, for appellant.
B. Jon Lilleberg, Paul S. Hopewell, Johnson & Condon, P.A., Minneapolis, for respondent.
Considered and decided by KALITOWSKI, Presiding Judge, HUSPENI, Judge,[*] and NORTON, Judge.[*]

OPINION
KALITOWSKI, Judge.
Appellant G.A.W. challenges the district court order granting summary judgment to respondent D.M.W. Appellant contends the court erred (1) by determining that res judicata and collateral estoppel barred his tort action, and (2) by determining that his subsequent tort action was against public policy.

FACTS
Appellant and respondent were married in the spring of 1988. Respondent gave birth to two minor children during the marriage: a boy in 1989 and a girl in 1994. Respondent represented to appellant that he was the father of both children, and he believed that to be so. Respondent did not disclose that she had extramarital affairs during the marriage. The parties separated on three different occasions, and in August 1996, respondent commenced an action for marital dissolution. During the dissolution proceedings appellant learned he was not the father of the two children born during the marriage.
The parties negotiated a dissolution settlement. Although a broader release was proposed by respondent, the agreement contained a clause releasing respondent only from further claims regarding child support, maintenance, and child custody issues. The settlement was read into the record and approved by the court. The record made no mention of possible tort claims arising out of actions that occurred during the marriage or during the dissolution. The terms of the settlement were included in a stipulated judgment and decree finalizing the dissolution and filed February 10, 1997.
On May 23, 1997, appellant brought tort claims against respondent, which he amended on January 23, 1998. The complaint alleges fraud, negligence, and intentional or negligent infliction of emotional distress. In an order dated September 18, 1998, the district court granted summary judgment for respondent, finding that the tort claims were barred by res judicata *287 and collateral estoppel, and that they were "not cognizable under Minnesota law and * * * prohibited as a matter of public policy." The district court awarded respondent her costs in the sum of $4,200.85 and denied respondent's motion for attorney fees.

ISSUES
1. Does collateral estoppel or res judicata bar an interspousal tort claim after a judgment and decree has been entered in a marital dissolution proceeding?
2. Does public policy bar an interspousal tort claim based on the misrepresentation of paternity?
3. Can a claim for negligent misrepresentation be brought outside of a commercial or business setting?

ANALYSIS
On appeal from summary judgment, the appellate court asks whether there are any genuine issues of material fact, and whether the lower court erred in its application of the law. State by Cooper v. French, 460 N.W.2d 2, 4 (Minn.1990). The court views the evidence in the light most favorable to the nonprevailing party. Fabio v. Bellomo, 504 N.W.2d 758, 761 (Minn.1993).

I.
On a given set of facts the appellate court applies de novo review to questions of collateral estoppel and res judicata. In re Trusts Created by Hormel, 504 N.W.2d 505, 509 (Minn.App.1993) (collateral estoppel), review denied (Minn. Oct. 19, 1993); Erickson v. Commissioner of Dep't of Human Servs., 494 N.W.2d 58, 61 (Minn.App.1992) (res judicata).

A. Collateral Estoppel
Collateral estoppel, or issue preclusion, applies only when (1) the issue is identical to the one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. Care Institute, Inc. v. County of Ramsey, 576 N.W.2d 734, 737 (Minn.1998) (citation omitted).
In the dissolution proceeding here, the parties did not litigate the tort claims raised in appellant's subsequent action. Nevertheless, the district court concluded that collateral estoppel applied because the parties took into consideration the actions underlying appellant's tort claims in agreeing to the stipulated settlement. But the fact that an issue is the subject of stipulation between the parties does not necessarily mean the issue has been litigated. Hentschel v. Smith, 278 Minn. 86, 94, 153 N.W.2d 199, 205 (1967) (noting that a consent judgment implies no determination by the court of any issues in the case, and therefore a consent judgment should not be the basis for a collateral estoppel action, except in the rare case where it may be fairly said that the parties intended this effect); Restatement Second of Judgments, § 27, cmt. e (a subject is not actually litigated if it is the subject of a stipulation unless the parties have manifested an intent that the stipulation be binding in a subsequent action) (1982). We conclude that collateral estoppel does not bar a tort action not addressed in a dissolution judgment.

B. Res Judicata
Res judicata, or claim preclusion, applies when a subsequent claim is based either on an issue previously litigated or an issue which might have been litigated in a previous action. Beutz v. A.O. Smith Harvestore Prods., Inc., 431 N.W.2d 528, 531 (Minn.1988). Res judicata requires (1) a final adjudication on the merits; (2) a subsequent suit involving the same cause of action; and (3) identical parties or persons in privity with the original parties. Demers v. City of Minneapolis, 486 N.W.2d 828, 830 (Minn.App.1992).
*288 Although res judicata generally applies to claims that could have been brought, there are exceptions to this rule. Res judicata is an equitable doctrine that must be applied in light of the facts of each individual case. R.W. v. T.F., 528 N.W.2d 869, 872 n.3 (Minn.1995). The court must focus on whether its application would work an injustice on the party against whom estoppel is urged. Id. Res judicata consequences may be avoided where a particular matter in the prior litigation was not in fact litigated because it was expressly withdrawn before the trial or final submission of the case, or, in a case involving several causes of actions, where one of them was dismissed or expressly abandoned before trial. Smith v. Smith, 235 Minn. 412, 418, 51 N.W.2d 276, 280 (Minn.1952).
Respondent contends that because appellant could have brought the tort claims in the dissolution action, he was required to do so in order to avoid res judicata consequences. We disagree. Any claims brought by appellant in the dissolution proceeding would have been counterclaims. A counterclaim is compulsory if it arises out of the transaction that is the subject matter of the opposing party's claim and does not require the presence of third parties over whom the court cannot acquire jurisdiction. Minn. R. Civ. P. 13.01. A counterclaim is permissive if it does not arise out of the transaction that is the subject matter of the opposing party's claim. Minn. R. Civ. P. 13.02.
The subject matter in a no-fault divorce proceeding is not who is responsible for the breakdown of the marriage, or what events took place leading up to the breakdown. Rather, the subject of the proceeding is a dissolution of the marriage and the resolution of issues involving child custody, child support, spousal maintenance, and property division. Thus, the tortious actions of a party are not a part of the marital dissolution, and tort actions do not "arise out of the transaction" of a marital dissolution. Therefore, we conclude that counterclaims involving torts in a dissolution action are permissive, not compulsory. There is no res judicata sanction for not raising a permissive counterclaim. The very nature of a permissive counterclaim is that although it may be properly triable in the pending action, it may also be reserved and made the subject of a separate action filed contemporaneously or at a later date. 1 David F. Herr & Roger S. Haydock, Minnesota Practice, § 13.5 Author's Comments (1998). Thus, res judicata does not bar an interspousal tort claim filed contemporaneously with or subsequent to a dissolution proceeding.
Further, we conclude that public policy also precludes a res judicata bar. The Wisconsin Supreme Court determined that although tort claims may be brought in a dissolution action, a party may bring tort claims in a second suit without res judicata consequences. Stuart v. Stuart, 143 Wis.2d 347, 421 N.W.2d 505, 508 (1988). In Stuart, a wife did not disclose during the dissolution proceeding that she intended to sue her husband for intentional torts involving spousal abuse allegedly committed during the marriage. Id. at 506-07. The parties stipulated to a settlement that was approved by the court. Id. at 507. Three months later, the wife brought a tort action against the former husband alleging assault, battery, and intentional infliction of mental distress. Id. at 507.
The Stuart court concluded that res judicata does not bar an interspousal tort claim subsequent to a marital dissolution. In reaching this conclusion the court identified several policy considerations. First, the court was concerned that barring a tort claim unfairly forces a spouse to elect between (a) commencing a tort action during the marriage and possibly enduring additional abuse; (b) joining a tort claim in a divorce action and waiving the right to a jury trial on the tort claim; and (c) commencing an action to terminate the marriage, foregoing the tort claim, and surrendering the right to recover damages arising from spousal abuse. Id. at 508. *289 We agree that the law should not require such choices.
The Wisconsin court also expressed concern that a divorce action is equitable in nature and involves a trial to the court, whereas a trial of a tort claim is one at law and may involve a request for a jury trial. Id. We agree that joining tort claims in a marital dissolution would involve an overlapping of procedural rights that would complicate dissolution proceedings.
The Stuart court further noted that dissolution proceedings would become unduly complicated if tort claims are required to be litigated in the same action. The court specifically referred to the potential need for additional witnesses and the involvement of insurance carriers, resulting in a lengthening of the period of time before a spouse could obtain a divorce and a delay in child custody and support determinations. Id. We agree that requiring these actions to be brought together would lead to protracted litigation that would not be in the best interests of the parties, their children, or the judicial system. In light of these and other policy concerns, we conclude res judicata will not bar interspousal tort claims where the claims are not specifically released as a part of the dissolution proceeding.
Respondent contends that appellant should not be allowed to bring this action because he argued the facts underlying his tort claims during the dissolution action. But appellant did not bring a counterclaim, nor did he assert a claim for damages. Nor did the court consider tort elements or tort damages. While the parties may have considered conduct that took place during the marriage in reaching the stipulated agreement, the agreement itself does not address the conduct appellant alleges except to say that appellant is not the father of the minor children born during the marriage. Finally, because the dissolution judgment's release language does not address tort issues, we reject respondent's argument that appellant waived his right to bring future claims based on the limited release language in the agreement.

II.
The district court also concluded appellant's tort claims were barred because they were against public policy:
While the statutes enacting no-fault dissolution in this jurisdiction do not preclude claims for all interspousal torts, the grounds specifically excluded such as alienation of affections and criminal conversation and seduction are the same in kind as those tort claims here, fraud and misrepresentation.
Some other jurisdictions have reached a similar conclusion. See Nagy v. Nagy, 210 Cal.App.3d 1262, 258 Cal.Rptr. 787, 790-91 (1989) (noting that it is not within the power of the judicial system to right certain wrongs occurring in the context of human relationships); Pickering v. Pickering, 434 N.W.2d 758, 761 (S.D.1989) (finding that the torts of intentional infliction of emotional distress, fraud, and deceit should be unavailable as a matter of public policy when predicated on conduct that leads to a marriage dissolution, noting it is inappropriate for the courts to intervene in these situations).
But the Minnesota Supreme Court abolished interspousal immunity from all torts in 1969. Beaudette v. Frana, 285 Minn. 366, 173 N.W.2d 416, 420 (1969). And in 1978, the legislature abolished the "heart balm" tort actions of breach of promise, alienation of affections, criminal conversation, and seduction, finding "the best interests of the people of the state will be served by the abolition of these causes of action." Minn.Stat. § 553.01 (1998). If the legislature had intended to abolish other torts arising out of the marital relationship, we conclude it would have so provided. Further, this court has recognized claims arising out of conduct that occurred during a marriage. In R.A.P. v. B.J.P., the court held that a former husband was allowed to bring intentional and negligent tort claims against his former wife for *290 infecting him with herpes during the marriage. 428 N.W.2d 103, 110 (Minn. App. 1988) (noting "[t]he novelty of a case should not operate to defeat recovery if general tort principles are applicable"), review denied (Minn. Oct. 19, 1988). Other jurisdictions have reached a similar result in reviewing claims similar to those raised by appellant. See Doe v. Doe, 122 Md.App. 295, 712 A.2d 132, 148-49 (1998) (allowing interspousal tort claims for negligence and intentional tort claims arising out of misrepresentation of paternity, noting that because interspousal immunity is no longer recognized, torts not otherwise abrogated should be available to spouses), cert. granted, (Md. Sept. 14, 1998); Koelle v. Zwiren, 284 Ill.App.3d 778, 220 Ill.Dec. 51, 672 N.E.2d 868, 875 (1 Dist.1996) (rejecting the argument that claims arising out of the misrepresentation of paternity are against public policy because they may be harmful to the child, finding "public policy does not serve to protect people engaging in behavior such as that with which plaintiff's complaint charges").
The claims raised by appellant involve recognized torts. Because interspousal immunity does not apply, we conclude there is no recognized legal barrier preventing a person from bringing fraud, misrepresentation, or infliction of emotional distress claims against his or her current or former spouse. And the question of whether misrepresentation of paternity can support those claims goes to whether the elements of each tort are met, not whether the conduct occurred during a marriage. Therefore, we conclude that the district court erred by dismissing appellant's claims as against public policy. We also reverse the district court's award of costs to respondent, since respondent should not have prevailed on res judicata or collateral estoppel grounds.

III.
Respondent argues that appellant's negligent misrepresentation claim should be dismissed because such a claim has only been recognized in the context of a business or commercial transaction. We agree. When the supreme court first recognized negligent misrepresentation, it stated that
one who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Bonhiver v. Graff, 311 Minn. 111, 248 N.W.2d 291, 298 (1976). Subsequently, this court determined that the duty of care owed in the context of negligent misrepresentation is "an objective standard of reasonable care or competence" applicable
when supplying information, either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment.
Smith v. Brutger Cos., Inc., 569 N.W.2d 408 (Minn.1997). To date, Minnesota courts have only considered this tort in a business or commercial setting.
Moreover the South Dakota Supreme Court in Pickering rejected a negligent misrepresentation claim in the context of an action alleging misrepresentation of paternity, concluding that negligent misrepresentation occurs when
in the course of a business or any other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in their business transactions, without exercising reasonable care in obtaining or communicating the information.
434 N.W.2d at 762. The Pickering court concluded that because the complaint "did not arise from a commercial or business setting and because no pecuniary injury *291 was suffered," summary judgment was appropriate. Id. at 762. The tort in South Dakota was based on the same section of the Restatement of Torts as the tort in Minnesota. See Restatement (Second) of Torts § 552 (1977). Because we agree with South Dakota's interpretation of this cause of action, we dismiss appellant's claim for negligent misrepresentation.
Although other arguments have been made regarding appellant's remaining fraud and infliction of emotional distress claims, these arguments involve factual issues that have not been addressed by the district court. We therefore decline to address them here, and remand for further consideration by the district court. See Thiele v. Stich, 425 N.W.2d 580, 582 (Minn.1988) (appellate courts only consider matters presented to and considered by the district court). Likewise we remand the remaining issues regarding damages, which are more appropriately decided by the district court. See Bryson v. Pillsbury Co., 573 N.W.2d 718, 722 (Minn.App.1998) (determination of whether damages are too speculative or remote should usually be left to trial court).

DECISION
Neither collateral estoppel, res judicata, nor public policy considerations bar appellant's interspousal tort claims. But because appellant's claim of negligent misrepresentation does not arise out of a business or commercial relationship, it must be dismissed.
Affirmed in part, reversed in part, and remanded.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.