IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 14, 2005 Session

## JAY GUINN CHRISTENBERRY v. DORIS ANNETTE CHRISTENBERRY

Appeal from the Circuit Court for Blount County
No. E-19439     W. Dale Young, Judge

No. E2004-02193-COA-R3-CV - FILED AUGUST 19, 2005

This is an appeal of a divorce action in which the Wife argues that the trial court failed to make an equitable distribution of the marital estate and the trial court erred in dismissing her independent lawsuit against Husband, and a corporation owned by Husband, for wages claimed to be earned by Wife and owing by the corporation. We hold that the distribution of marital property should be modified so as to award Wife sole ownership of the marital home, subject to Husband's right of first refusal to purchase the home in the event it is sold, and Husband's right to visit and maintain the gravesite of the parties' daughter, located near the home on part of the marital estate, upon Husband's providing reasonable notice to Wife. We further find that the trial court erred in dismissing Wife's lawsuit against Husband and therefore vacate the trial court's order dismissing with prejudice the Wife's lawsuit against Husband and the corporation. We affirm the trial court's ruling in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified in Part and Vacated in Part ; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

R. Deno Cole, Knoxville, Tennessee, for the Appellant, Doris Annette Christenberry.

John D. Lockridge, Knoxville, Tennessee, for the Appellee, Jay Guinn Christenberry.

**OPINION**

**I**

On December 11, 2002, Jay Guinn Christenberry ("Husband") filed this action for divorce against the Appellant, Doris Annette Christenberry (Wife"). Wife filed an answer and a counterclaim. The parties agreed and stipulated that there were grounds for a divorce and that each

party was entitled to a divorce upon stipulated grounds. By order entered January 14, 2004, the trial court ordered each party to be divorced from the other, and a hearing was set to determine the division and distribution of marital property.

The parties presented testimony and evidence over the course of a three-day hearing ending on May 11, 2004. The trial court determined that all of the parties' property was marital property, and neither party disputes this ruling. After the hearing, the trial court ruled as follows in part pertinent to this appeal:

> IT IS ORDERED that the [Wife] is awarded fee simple in the home of the parties situated on 1.90 acres at Chris Haven farm subject to a life estate interest reserved to the [Husband] in the event the [Wife] predeceases the [Husband]. The contents of the home shall be awarded to the [Wife].[1]
>
>               \*                \*               \*
>
> IT IS ORDERED that the [Husband] is awarded the [Wife's] stock ownership in H.A.G., Inc., which property is described as being situated in the 13th District of Blount County, Tennessee, consisting of a golf course, a rental farm house and property referred to as an inn.
>
> The [Husband] shall assume the indebtedness thereon and hold the [Wife] harmless.
>
> The ORDER finds that any future claims, pending claims or lawsuits or disputed interests that the Defendant may assert or claim are herein declared null and void and the pending lawsuit styled Doris Christenberry v. H.A.G., Inc., and Jay Christenberry is hereby dismissed with prejudice and defendant taxed with the costs.

Wife appeals, raising the issue of whether the trial court erred in failing to award her an equitable share of the marital estate. In her brief, Wife breaks this issue into the following sub-issues, which we quote:

> 1. Did the Court err in awarding the marital home to Wife, subject to a life estate interest?
>
> 2. Did the Court err in failing to award Wife the Farm, which is part of the marital home?

---

[1]The court's original order mistakenly stated "The contents of the home shall be awarded to the Plaintiff [Husband]," but the court corrected it to award the home's contents to Wife in a subsequent order.

3. Alternatively, did the Court err in awarding 1.9 acres of land in conjunction with the marital home, in lieu of 3.5 acres, as set forth in a map Plot?

4. In awarding the golf course, i.e. 100% stock in H.A.G., Inc., to Husband, did the Court err in awarding the golf course, rental house, and Country Inn as a part of the golf course?

5. Did the Court err in awarding Wife $20,000.00 for her share of the rental house situated at 1263 Tittsworth Road, Seymour, Tennessee, in lieu of ordering the house to be awarded to Wife, or alternatively, in lieu of ordering the sale of said house and equally dividing the proceeds therefrom?

6. Did the Court err in equally dividing speculative proceeds from a draft copy of Wife's writings, and did the Court err in awarding Wife the physical copy of said writings?

7. Did the trial court err in dismissing Wife's independent cause of action against H.A.G., Inc., and Husband, and in enjoining Wife from all future such actions?

## II

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993).

## III

The controlling statute in this case, Tenn. Code Ann. § 36-4-121, provides that the court shall consider "all relevant factors" including the following factors in making an equitable distribution of marital property:

(1)  The duration of the marriage;
(2)  The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3)  The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)  The relative ability of each party for future acquisitions of capital assets and income;

(5)  The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6)  The value of the separate property of each party;

(7)  The estate of each party at the time of the marriage;

(8)  The economic circumstances of each party at the time the division of property is to become effective.

(9)  The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)  The amount of social security benefits available to each spouse; and

(11)  Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

A trial court is allowed wide latitude in determining an equitable division of marital property and we will defer to the trial court's determination unless it is inconsistent with the factors set forth above or there is a preponderance of evidence to the contrary. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991).  As noted by this court in *King v. King,* when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn.1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown,* 913 S.W.2d [163] at 168.... In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.App.1990).

*King v. King,* 986 S.W.2d 216, 219 (Tenn.Ct.App.1998) (quoting *Roseberry v. Roseberry,* No. 03A01-9706-CH-00237, 1998 Tenn.App. LEXIS 100, at *11-12 (Tenn.Ct.App. Feb. 9, 1998), *no*

*appl. perm. appeal filed); Morton v. Morton,* No. E2003-02784-COA-R3-CV, 2005 WL 1950125 at \*12 (Tenn. Ct. App. E.S. filed Aug. 15, 2005).

Pursuant to the request of the trial court, both parties filed a proposal for division of the marital property. In its memorandum opinion, the trial court stated as follows:

> The Court has carefully reviewed the testimony of the parties and their witnesses, more than sixty odd exhibits in the case, the memoranda, closing arguments, and proposals submitted by the parties.
>
> The Court has given special consideration to the mandates of Tennessee Code Annotated § 36-4-121 and has concluded that the [Husband's] proposal for division of property (together with the attached flow chart) constitutes a fair, just and equitable distribution of the marital assets and liabilities of the parties. Said [Husband's] proposal is approved and adopted by the Court.

The trial court did not make specific findings of fact regarding the value of individual assets of the marital estate, other than adopting the values contained in Husband's proposal. According to the Husband's filed proposal for division of property, the net equity value of the property awarded to Wife totaled $1,207,500. The net equity value of the property awarded to Husband totaled $635,611. Husband's brief states that the "total net estate awarded to the Wife" was $1,575,000, and the "total net estate awarded to the Husband" was $2,151,400. There is no readily apparent reason in the record for this discrepancy. At oral argument before this court, counsel for both parties were in general agreement that considering the debt associated with the various assets of the estate, Wife received approximately $975,000 in net marital assets and Husband received approximately $879,900 in net marital assets.

We review the trial court's division of marital assets keeping in mind the principle that "[t]he division of the estate is not rendered inequitable simply because it is not mathematically equal." *King v. King,* 986 S.W.2d 216, 219 (Tenn. Ct. App.1998).

This divorce ended a marriage of some thirty-six years. Three children were born to the marriage, none of whom was a minor at any time pertinent to this case. At the time of the divorce, Husband was 58 years old, and Wife was 59 years old. Both parties were in reasonably good health. Husband has a law license and practiced law in Tennessee from 1971 until 1997 or 1998, when he began maintaining and managing the golf course owned by H.A.G., Inc. Wife worked at the golf course as a bookkeeper and in other capacities for a number of years during the marriage. Wife testified that she is able-bodied and willing to find employment.

As noted above, the trial court awarded Wife the marital residence subject to a life estate in favor of the Husband in the event Wife predeceases Husband. Husband never requested a life estate interest at the trial level; in fact, his proposal for division of property requests that Wife be awarded the residence. The trial court did not elaborate on its reason for awarding the life estate. At oral argument, Husband's attorney speculated that the trial court's action may have been because Husband wanted to retain access to the gravesite of his daughter, who is buried on the premises of the marital residence. The parties' daughter, Denise Yvette Christenberry, was tragically killed in an automobile accident in 1993.[2]

We find that the evidence presented at trial preponderates against the award of the life estate to Husband because it does not yield an equitable division of property. The marital residence appears to be the most valuable asset awarded to Wife. Its value is diminished significantly by the imposition of a life estate interest in Husband's favor, which renders the home non-transferable without Husband's consent. Removing the Husband's life estate from the marital residence results in Wife having sole ownership of the property and this creates an equitable distribution of the marital assets.

However, we also wish to recognize and accommodate Husband's interest in continuing to have access to visit and maintain his daughter's gravesite. For this reason, we find it appropriate to grant Father this right, subject to the requirement that he provide Wife twenty-four hours' notice prior to visitation of the gravesite. This right shall expire and be held for naught upon Wife's sale or transfer of the property to a third party. Further, Husband shall have an absolute right of first refusal to purchase the marital residence in the event title to the property is transferred.

On June 2, 2004, Wife, acting *pro se,* filed a lawsuit styled *Doris Annette Christenberry v. H.A.G. Inc. and Jay G. Christenberry* in the Circuit Court for Blount County. Her complaint alleged that the defendants "refused to pay wages to [her] during the year 1999. The wages were earned as [Wife] had worked for the corporation H.A.G. Inc. since 1987." On June 25, 2004, the trial court entered its order ruling that "any future claims, pending claims or lawsuits or disputed interests that the [Wife] may assert or claim are herein declared null and void," and dismissing the action filed by Wife on June 2, 2004.

A copy of the June 2, 2004 complaint was filed as an exhibit in the trial before the court. The technical record before us contains no pleadings or other documents pertaining to Wife's subsequent lawsuit. There is no order of consolidation of the subsequent lawsuit with the divorce action contained in the record. As far as this record shows, there was no entry of appearance filed on behalf of either Mr. Christenberry or the corporation H.A.G., Inc.

---

[2]See *Christenberry v. Nelson*, No. 03A01-9701-CV-00039, 1997 WL 650889, 1997 Tenn. App. LEXIS 701 (Tenn. Ct. App. E.S., filed Oct. 16, 1997) *appl. perm. appeal denied* May 11, 1998.

We are of the opinion that it was error for the trial court to dismiss Wife's independent lawsuit under the circumstances of this case. The language attempting to "declare null and void" *any* future claims or lawsuits by Wife against Husband is clearly overbroad and beyond the authority of the trial court. While it is not improper for a trial court to dismiss a second lawsuit attempting to relitigate issues already tried and decided in a divorce action on grounds of *res judicata* or collateral estoppel, *see Kemp v. Kemp,* 723 S.W.2d 138 (Tenn. Ct. App. 1987), the record does not reflect that these doctrines are applicable in the present case.

During the course of the marriage, Wife researched and wrote a manuscript which she testified she would like to turn into a book and publish. Although Wife's sub-issue raised in her brief states, "did the Court err in awarding Wife the physical copy of said writings," at oral argument she asserted that Husband still was in possession of the manuscript. The parties at oral argument stipulated that Husband would turn over to Wife the hard copy of the manuscript, and upon remand, the trial court should enter an order reflecting the same.

Regarding the remainder of Wife's sub-issues as quoted above, we have carefully reviewed the record and hold that the evidence does not preponderate against the trial court's judgment on those issues. It is clear that the resolution of these asset valuation and distribution issues hinged predominantly on determination of credibility of the various witnesses. Our appellate courts "accord deference to the trial court's determinations regarding credibility." *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002); *see Wells v. Tennessee Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999) (stating that "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). As we have noted, taking into consideration the marital estate as a whole and each of the marital assets in dispute, we believe that granting Wife sole ownership of the residence, not subject to a life estate interest, yields a distribution between the parties that is equitable.

For the aforementioned reasons, the judgment of the trial court is modified so as to award Wife sole ownership in the marital home, subject to Husband's right of first refusal to purchase the home in the event it is sold, and Husband's right, during Wife's ownership of the property, to visit and maintain the gravesite of the parties' daughter upon providing twenty-four hours' notice to Wife. On remand, the trial court is instructed to conduct a hearing, if necessary, to determine the exact terms of Husband's first right of refusal and to enter an appropriate order reflecting those terms; but such terms shall not be drafted in such a way as to hinder Wife's ability to sell the property for a given amount in a 100% cash sale. We vacate the paragraph of the trial court's order dismissing with prejudice Wife's independent lawsuit against Husband and the corporation. The trial court's judgment is in all other respects affirmed. Costs on appeal are assessed one-half to the Wife, Doris Annette Christenberry, and one-half to the Husband, Jay Guinn Christenberry.

_____

SHARON G. LEE, JUDGE

-7-